AO 106 (Rev. 04/10) Application for a Search Warrant  RAS

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black and Green OWX Citric Cellphone<br>Serial No. 201800832<br>Seizure No. 2019-2506-000391-01 | Case No.<br><br>**19MJ3061** |

FILED
JUL 22 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY               DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 USC 841, 846, 952, 960, 963 | Possession with intent to distribute controlled substance; Importation of a Controlled Substance; Conspiracy to commit same |

The application is based on these facts:

See attached Affidavit of Special Agent Joseph Cornwall

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Joseph Cornwall, Special Agent HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7-22-2019 @ 1:00 pm

_____
*Judge's signature*

City and state: San Diego, CA     Hon. Peter C. Lewis, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Joseph Cornwall, Special Agent, being duly sworn do hereby state that the following is true to my knowledge and belief:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant in furtherance of a narcotics smuggling investigation conducted by the Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI"), for the following electronic device seized from Juan Carlos Castro ("CASTRO") on January 18, 2019:

> (1) Black and Green OWX Citric Cellphone
> IMEI 1: 355965090989471
> IMEI 2: 355965090989489
> Serial No. 201800832
> Seizure No. 2019-2506-000391-01
> (hereinafter **Target Device**)

2. The **Target Device** was seized from CASTRO on January 18, 2019 at the time of his arrest. It is believed that the **Target Device** was used by CASTRO to communicate with co-conspirators during a drug smuggling event involving methamphetamine within the Southern District of California, in S.D. Cal. Crim. Case No. 19cr0486-GPC. Probable cause exists to believe that the **Target Device** contains evidence relating to violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963. The **Target Device** is currently in the possession of HSI, located at 880 Front Street, Suite 3200, San Diego, CA 92101.

3. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I submit this Affidavit in support of the application to search the **Target Device** for and to seize the items set forth in Attachment B (incorporated herein) which I believe will be found in the item to be searched as described in Attachment A (incorporated herein).

4. The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## EXPERIENCE AND TRAINING

5. I am an investigative or law enforcement officer within the meaning of 18 U.S.C. § 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I am a Special Agent with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), and have been so employed since August 2002. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge ("DSAC"), San Ysidro located in Otay Mesa, California. I am cross-designated and have the authority to conduct Title 21 investigations and enforcement activities. I have been involved with investigations for Title 21 offenses and am familiar with the Interagency Cooperation Agreement between the U.S. Drug Enforcement Administration ("DEA") and ICE.

6. I hold a Bachelor of Science degree in Criminal Justice from St. Joseph University in Philadelphia, PA. After being hired as a special agent in 2002, I received criminal investigative training, including twenty-six weeks at the Federal Law Enforcement Training Center ("FLETC"). During this training, I received instruction on the fundamentals of criminal investigations: to include drug and money laundering investigations. I have had formal and on-the-job training in controlled substance investigations, and I am familiar with the manner in which controlled substances, including methamphetamine, are imported, often into the United States from Mexico, packaged, marketed, sold, and consumed. I have also received vast on-the-job training from my supervisors and colleagues. I have led and participated in investigations since graduating from the FLETC in 2003 targeting criminal

organizations ranging from low level couriers to the command and control elements of transnational criminal organizations ("TCO") responsible for trafficking multi-hundred-kilogram quantities of illicit drugs on a weekly basis. These investigations have also targeted the money laundering and bulk cash smuggling apparatuses used by the various TCOs to fund their illicit activities. Furthermore, these investigations have resulted in the arrests of subjects and the seizure of assets, controlled substances, and bulk cash.

7. I have led and participated in investigations involving the use of electronic surveillance techniques to include, but not limited to, court-authorized wire intercepts; video surveillance; global positioning satellite ("GPS") trackers; and body-worn monitoring devices. These investigations have included violations of statutes listed under Titles 18, 21, 31, and 49 of the United States Code as well as violations under California state law. As a result of these investigations, I have reviewed conversations of a multitude of individuals involved in both drug trafficking and the laundering of illicit proceeds.

8. I have conducted and participated in investigations concerning the identification of co-conspirators through telephone records and bills, financial documents, drug ledgers, photographs, and other documents. I have also participated in and conducted debriefs of individuals who were arrested and later cooperated with law enforcement. I have participated in investigations in which the court-authorized interception of communications or other electronic surveillance tools were utilized to further the investigation.

9. Based on my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods utilized in drug trafficking operations and the unique trafficking patterns employed by drug trafficking organizations ("DTO"). I know drug traffickers often require the use of a telephone facility to negotiate times, places, schemes and manners for importing, possessing, concealing, manufacturing and distributing controlled substances and for arranging the disposition of proceeds from the sales of controlled substances. I know professional drug operations depend upon maintaining their extensive contacts. The telephone enables drug dealers to maintain contact with drug associates, drug suppliers and drug customers. I also know drug traffickers sometimes use fraudulent information, such as fictitious names and false addresses, to

subscribe to communication facilities, especially cellular phones, and frequently use communication facilities, such as encrypted messaging applications, to thwart law enforcement efforts to intercept their communications. Through these investigations, my training and experience, and my conversations with other law enforcement investigators, I have become familiar with the methods used by drug traffickers to smuggle and safeguard illicit drugs, distribute illicit drugs, and collect and launder proceeds related to the sales of illicit drugs. I am also familiar with the methods employed by large-scale DTOs in attempts to thwart detection by law enforcement including, but not limited to, the use of cellular telephone technology, counter surveillance techniques, false or fictitious identities and addresses, and coded communications. Based on my training and experience, I am familiar with drug traffickers' methods of operation, including their methods of distribution, storage, and transportation of illicit drugs, their methods of collecting proceeds of drug trafficking, and their methods of laundering money to conceal the nature of the proceeds. During the course of my employment, I have also become familiar with the ordinary meaning of controlled substance slang and jargon, packaging methods, consuming and transferring of controlled substances, and I am familiar with the manners and techniques of traffickers in cocaine, methamphetamine, heroin, and marijuana as practiced locally, including the importation from Mexico.

10. Based upon my training and experience as a special agent, and consultations with law enforcement officers experienced in narcotics trafficking and controlled substance manufacture and distribution investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Conspirators involved in the manufacture, distribution and importation of controlled substances will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Conspirators involved in the manufacture, distribution and importation of controlled substances will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

4

    c. Conspirators involved in the manufacture, distribution and importation of controlled substances and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    d. Conspirators involved in the manufacture, distribution and importation of controlled substances will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

    e. Conspirators involved in the manufacture, distribution and importation of controlled substances will use cellular telephones because they can easily arrange to meet co-conspirators and or potential buyers at predetermined locations.

    f. Conspirators involved in the manufacture, distribution and importation of controlled substances will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

    g. Conspirators involved in the manufacture, distribution and importation of controlled substances often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

    h. The use of cellular telephones by conspirators or drug smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

11. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

5

12. Based upon my training and experience as a special agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I have learned that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I have learned, through my training, education, and experience, that searches of cellular/mobile telephones associated with narcotics smuggling yield evidence:

    a. tending to indicate efforts to memorialize the delivery of controlled substances and/or the importation of controlled substances, including, but not limited to: phone logs, messages, photos, contact lists, and financial records;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the manufacture, distribution, importation or delivery of methamphetamine, or some other federally controlled substance within the United States, or conspiracy thereof;

    c. tending to identify co-conspirators, criminal associates, or others involved in the manufacture, distribution, importation or delivery of methamphetamine, or some other federally controlled substance within the United States, or conspiracy thereof;

    d. tending to identify travel to or presence at locations involved in the manufacture, distribution, importation or delivery methamphetamine, or some other federally controlled substance within the United States, or conspiracy thereof, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## PROBABLE CAUSE

13.    On January 18, 2019, CASTRO, a United States citizen, attempted to enter the United States through the Otay Mesa, California, Port of Entry (OTMPOE). CASTRO was the driver and sole occupant of a 2007 Nissan Altima bearing California license plate no. 6AQB513. CASTRO approached U.S. Customs and Border Protection (CBP) Officer Brittney Bryan-Flamenco in vehicle lane 7. CASTRO gave two negative customs declarations and stated he was going to San Diego. CBPO Bryan inspected the trunk of the vehicle and discovered several packages wrapped in clear plastic. CBPO Bryan then radioed for assistance, and CASTRO was escorted to the security office while a more thorough inspection of the vehicle was performed. Canine Enforcement Officer (CEO) Jorge Castillo responded to CASTRO's vehicle with his narcotics detection dog (NDD) "Brain." Brain alerted to the rear trunk seam of the vehicle. The vehicle was referred to secondary inspection.

14.    CBPO Lopez discovered several packages concealed in the area between the rear seat and the wall of the trunk near the hybrid battery. A total of 35 packages weighing approximately 17.04 kilograms were discovered. CBPO Lopez probed a random package and extracted a crystal substance that field-tested positive for methamphetamine.

15.    Special Agent (SA) Joseph Cornwall of Homeland Security Investigations was notified of the seizure and arrived at the POE at approximately 0740 hours. SA Cornwall placed CASTRO under arrest for importing narcotics. Incident to arrest, agents seized the **Target Device** from CASTRO and stored it according to HSI policy at the HSI office located in San Diego.

16.    At approximately 10:15 a.m., CASTRO was advised of his *Miranda* rights. He elected to waive those rights and make a statement. In essence, CASTRO denied knowledge of the narcotics and said he was "set up" by a girl. CASTRO also stated that he works in construction and managed an online business selling dog products at

7

"www.cutelittlepaws.org." Eventually, CASTRO stated that he knew "something" was inside the vehicle and he knew it was "not good."

17. Based upon my experience and investigation in this case, I believe that CASTRO as well as other persons currently unknown, were involved in an on-going conspiracy to facilitate the movement of narcotics into the United States and beyond. Further, based on my experience investigating narcotics traffickers, I believe that CASTRO used the **Target Device** to coordinate with co-conspirators regarding the manufacture, distribution and importation of federally controlled substances, and to otherwise further this conspiracy within the United States. I also believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Device** which may identify other persons involved in drug trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I further believe that information relevant to the drug trafficking activities of CASTRO such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device** described herein.

18. Finally, narcotics trafficking activities require detailed and intricate planning to successfully evade detection by law enforcement. In my professional training and experience, this requires planning and coordination in the days and weeks and often months prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. Given these facts, I respectfully request permission to search the **Target Device** for the period of July 18, 2018 up to and including January 18, 2019.

## METHODOLOGY

19. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the

8

device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the **Target Device** and memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

9

## CONCLUSION

22. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that CASTRO used the **Target Device** to facilitate the offense of importing methamphetamine. Further, the **Target Device** was likely used to facilitate the offense by transmitting and storing data, which is evidence of violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963.

23. Because the **Target Device** was seized during the investigation of CASTRO's smuggling activities and have been securely stored, there is probable cause to believe that evidence of illegal activities committed by CASTRO continues to exist on the **Target Device**. As stated above, I believe that the appropriate date range for this search is from July 18, 2018 up to and including January 18, 2019.

24. Therefore, I respectfully request that the Court issue a warrant authorizing me, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Joseph Cornwall, Special Agent
Homeland Security Investigations

Sworn to before me and subscribed in my presence
before me this ___22ND___ day of July, 2019

_____
HON. PETER C. LEWIS
United States Magistrate Judge

10

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The property to be searched in connection with an investigation of violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963, is described below:

(1) Black and Green OWX Citric Cellphone
IMEI 1: 355965090989471
IMEI 2: 355965090989489
Serial No. 201800832
Seizure No. 2019-2506-000391-01



**Target Device** is currently in the possession of Homeland Security Investigations located at 880 Front Street, Suite 3200, San Diego, CA 92101

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of July 18, 2018 to January 18, 2019.

a. tending to indicate efforts to memorialize the delivery of controlled substances and/or the importation of controlled substances, including, but not limited to: phone logs, messages, photos, contact lists, and financial records;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the manufacture, distribution, importation or delivery of methamphetamine or some other federally controlled substance within the United States, or conspiracy thereof;

c. tending to identify co-conspirators, criminal associates, or others involved in the manufacture, distribution, importation or delivery of methamphetamine, or some other federally controlled substance within the United States, or conspiracy thereof;

d. tending to identify travel to or presence at locations involved in the manufacture, distribution, importation or delivery of methamphetamine, or some other federally controlled substance within the United States, or conspiracy thereof, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**which are evidence of violations of 21 U.S.C. §§ 841, 846, 952, 960, and 963**.

The seizure and search of the cellular phone(s) shall follow the procedures outlined in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phone(s) may be searched for the evidence above.